## WOMEN & INFANTS HOSPITAL OF RHODE ISLAND

v.

## COMMUNITY HEALTH NETWORK OF CONNECTICUT, INC.

No. 04–535ML.

United States District Court,
D. Rhode Island.

April 28, 2005.

Linn F. Freedman, Nixon Peabody LLP, Providence, RI, for Women & Infants' Hospital of Rhode Island.

Brooks R. Magratten, Vetter & White, Incorporated, Providence, RI, Andrew Zeitlin, Esq., Shipman & Goodwin LLP, Stamford, CT, for Community Health Network of Connecticut, Inc.

## MEMORANDUM AND ORDER

LISI, District Judge.

This matter is presently before the Court for determination on a motion to dismiss filed by the defendant, Community Health Network of Connecticut, Inc. ("CHNC" or "the corporation"). CHNC seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(2), on the grounds that this Court lacks personal jurisdiction over the corporation. For the reasons that follow, the defendant's motion is denied.

The plaintiff, Women & Infants Hospital of Rhode Island ("W & I" or "the hospital"), seeks compensation for health care services provided to a CHNC member, "Jane Doe", and her infant. The hospital asserts that CHNC authorized W & I to provide medical services to Ms. Doe and her infant. CHNC denies doing so. CHNC has tendered a payment to W & I. The hospital contends that additional

amounts are owed by CHNC for the medical care W & I provided.

CHNC is a non-profit managed care organization that has contracted with the State of Connecticut's Department of Social Services to arrange for the provision of health care services for Medicaid-eligible Connecticut residents. Affidavit of Lynn Childs (Feb. 8, 2005), ¶ 2. The corporation has no agents, officers or employees located in Rhode Island. *Id.*, ¶ 3. CHNC does not maintain a Rhode Island office or telephone number. *Id.* CHNC is not registered to do business in Rhode Island and does not file reports with any Rhode Island governmental agency. *Id.*, ¶¶ 4, 5. The defendant does not advertise or solicit business in Rhode Island. *Id.*, ¶ 6. CHNC does not provide services in Rhode Island. *Id.*, ¶ 7. The corporation has no members in Rhode Island and does not derive any business or income from activity in Rhode Island. *Id.*, ¶ 8.

On or about June 19, 2003, Jane Doe sought treatment at Middlesex Hospital, Middletown, Connecticut. *Id.*, ¶ 9; Affidavit of Debra Gwiazdowski (Mar. 9, 2005), ¶ 5. At the time, Ms. Doe was approximately 25 weeks pregnant. Childs Aff. ¶ 9; Gwiazdowski Aff. ¶ 7. Middlesex Hospital transferred her to W & I where she was admitted for treatment. Childs Aff. ¶ 10; Gwiazdowski Aff. ¶ 5. Middlesex Hospital transferred Ms. Doe to W & I without the prior authorization or knowledge of the defendant. Childs Aff., ¶¶ 10, 17. Ms. Doe gave birth on June 20, 2003. *Id.*, ¶ 12; Gwiazdowski Aff. ¶ 7.

The parties agree that, on June 20, 2003, W & I contacted CHNC concerning Ms. Doe's admission. Childs Aff., ¶ 13; Gwiazdowski Aff. ¶ 6. The parties disagree as to whether Ms. Doe's admission to W & I and the treatment provided to her and her child were ever authorized by CHNC. It is undisputed that Ms. Doe and the infant

remained at W & I until June 24, 2003, and August 5, 2003, respectively.

The plaintiff bears the burden of proving the Court's personal jurisdiction over the defendant. *E.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir.2002). W & I does not contend that general jurisdiction exists. However, the hospital alleges that the Court possesses specific jurisdiction over the defendant.

■ When presented with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), the district court may select one of several evidentiary standards in assessing whether a plaintiff has met its burden of proving the existence of specific jurisdiction. *Id.* at 50–51; *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). In its memorandum in support of its motion to dismiss, the defendant identifies three of these standards: the "prima facie" standard, the "preponderance" standard and the "likelihood" standard. *See Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671 (1st Cir.1992) (defining and discussing three standards). CHNC does not specify which standard it seeks the Court to apply. In its memorandum, the hospital urges the Court to employ the "prima facie" method. The Court concludes that application of that standard is appropriate in the instant case. *See Foster–Miller, Inc.*, 46 F.3d at 141 (citing *Boit*, 967 F.2d at 674–78) (encouraging district courts to employ level of scrutiny most appropriate to particular case). Thus, the Court proceeds to determine whether W & I has made a prima facie showing of personal jurisdiction over defendant.

■ Under the prima facie method, the district court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."

*Boit,* 967 F.2d at 675. Similar to its role in deciding a motion for summary judgment, "the court ... must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." *Foster–Miller, Inc.,* 46 F.3d at 145. The Court accepts these facts "as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998); *see also Sawtelle v. Farrell,* 70 F.3d 1381, 1385–86 (1st Cir.1995). The Court "then add[s] to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of Law at Andover, Inc.,* 142 F.3d at 34.

Rhode Island's "long-arm" statute, R.I. Gen. Laws § 9–5–33, authorizes assertion of personal jurisdiction to the fullest extent permitted by the United States Constitution. *E.g., Donatelli v. Nat'l Hockey League,* 893 F.2d 459, 461 (1st Cir.1990). Thus, the issue for the Court's determination is whether the assertion of jurisdiction over CHNC comports with the strictures of due process. *Id.* Due process requires that "minimum contacts" exist between the defendant and the forum state such that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ Where specific jurisdiction is asserted, the Court employs a three-prong standard in conducting the minimum-contacts analysis. *N. Laminate Sales, Inc. v. Davis,* 403 F.3d 14, 25 (1st Cir.2005); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg.,* 295 F.3d 59, 63 (1st Cir.2002). First, "the

claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992). Second, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Id.* Third, the exercise of jurisdiction must be reasonable. *Id.* CHNC contends that the hospital's claim of jurisdiction fails under each prong of the tripartite standard.

■ The defendant asserts that W & I cannot satisfy the first prong of the analysis because CHNC has engaged in no activities in Rhode Island related to the claim from which the litigation resulted. In support of its motion to dismiss, CHNC has submitted the affidavit of Lynn Childs, the corporation's vice president of health services. As previously set forth, Ms. Childs' affidavit reveals that CHNC is a Connecticut-based organization that maintains no offices and has no representatives in Rhode Island. No CHNC employee or representative has ever traveled to Rhode Island for the purpose of discussing the parties' dispute with W & I representatives. Childs Aff., ¶ 14.

■ The "relatedness" inquiry, is a "flexible, relaxed standard." *N. Laminate Sales, Inc.,* 403 F.3d at 25 (quoting *Pritzker v. Yari,* 42 F.3d 53, 61 (1st Cir.1994)). "[A] defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes") in the forum state. *Id.* (citing *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

W & I has submitted an affidavit executed by Debra Gwiazdowski, the hospital's director of patient financial services. Ms. Gwiazdowski avers that, on June 20, 2003, a hospital employee telephoned CHNC and that one of the corporation's representatives provided W & I with authorization to provide services to Ms. Doe. Gwiazdowski Aff., ¶ 6; *see id.*, Tab 1 (6/20/03 entry). CHNC's representative provided a specific authorization number for Ms. Doe's treatment. *Id.*, ¶ 6. Moreover, Ms. Gwiazdowski recounts that the hospital was provided with an authorization number for Ms. Doe's infant on July 8, 2003. *Id.*, ¶ 9. The plaintiff's claims arise out of actions allegedly undertaken by the hospital in reliance upon defendant's authorization. Therefore, under the prima facie standard, the "relatedness" prong of the minimum contacts analysis is satisfied.

■ The focus of the second prong of the analysis, the "purposeful availment" requirement, is on "voluntariness and foreseeability." *N. Laminate Sales, Inc.*, 403 F.3d at 25 (citing *Sawtelle*, 70 F.3d at 1391). W & I has proffered evidence that CHNC, through one of its employees, authorized plaintiff to provide medical services to Ms. Doe and her infant. If such approval was in fact conferred, albeit upon the hospital's initiation of contact with the defendant, it should have been plainly evident to CHNC, as a managed care organization, that the authorization would induce W & I to provide medical care to Ms. Doe in anticipation that CHNC would facilitate financial reimbursement for those services. It should have been equally obvious that the financial impact of the hospital's detrimental reliance on CHNC's authorization would occur within the state in which treatment was provided. Under such circumstances, it should have been foreseeable to CHNC that it might later be held accountable for its authorization in Rhode Island's courts.

■ The third prong of the jurisdictional analysis requires that the Court's exercise of jurisdiction be reasonable. The Supreme Court has identified a set of "gestalt" factors to be considered in assessing reasonableness. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Cambridge Literary Props., Ltd.*, 295 F.3d at 66. These factors include: the burden on the defendant in appearing; the forum state's interest in adjudicating the matter; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559; *see N. Laminate Sales, Inc.*, 403 F.3d at 26.

In the instant matter, neither the judiciary's interest in efficient resolution of the controversy nor the states' social policy interests weighs in favor of, or against the Court's exercise of jurisdiction. Both the plaintiff's interest in obtaining convenient relief and Rhode Island's interest in redressing the economic harm allegedly sustained in the state by one of its hospitals support the Court's exercise of jurisdiction. *See Daynard*, 290 F.3d at 62 (noting traditional deference afforded to a plaintiff's forum choice).

Although litigation of the parties' dispute in Rhode Island rather than in Connecticut may result in some inconvenience and additional expense to defendant, this additional burden does not outweigh the factors favoring adjudication in Rhode Island. CHNC asserts that its "burden of

appearing in Rhode Island is great." Def. Mem. in Support of Motion to Dismiss at 11. However, the Court finds no basis upon which to conclude that requiring the Connecticut-based corporation to litigate in an adjoining state would impose a special or unusual burden upon defendant. *See N. Laminate Sales, Inc.*, 403 F.3d at 26 (quoting *Pritzker*, 42 F.3d at 64).

Accordingly for the above reasons, the defendant's motion to dismiss for lack of personal jurisdiction is denied.

SO ORDERED.